# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTIAN JONES,  :
    Plaintiff  :
                                 :
         v.  :          No. 3:10-CV-0359
                                 :         (JUDGE VANASKIE)
                                 :
LUZERNE COUNTY CORRECTIONAL  :
FACILITY, ET AL.,  :
    Defendants  :

## MEMORANDUM

This matter is before the Court on a Report and Recommendation (R&R) issued by Chief Magistrate Judge Thomas M. Blewitt, who proposes that all claims of the pro se incarcerated Plaintiff, Christian Jones, with the exception of an excessive force claim against one individual defendant, be dismissed. Following issuance of the R&R, Jones filed a Motion for Monetary Damages and a Motion to Appoint Counsel. For the reasons that follow, the R&R will be adopted in part, and Jones's motions will be denied.

## I. BACKGROUND

Christian Jones, an inmate on work release through the Luzerne County Correctional Facility in Wilkes-Barre, Pennsylvania, filed this civil rights action, pro se, pursuant to 42 U.S.C. § 1983 on February 18, 2010. Named as Defendants in the action are the Luzerne County Correctional Facility ("LCCF") and the following three LCCF employees: Lieutenant

Jim Pugh; Lou Elmy;[1] and Correctional Officer Berman. Plaintiff's claims are presented on

six handwritten pages attached to the Section 1983 Complaint form that this Court provides

to pro se litigants. Plaintiff alleges that he is a "black, gay, terminally ill . . . convicted felon"

who arrived at LCCF in 2008 to complete his sentence while on work release.[2] Plaintiff

avers that he was verbally and sexually harassed by Elmy, Lt. Pugh, Lt. Dominic,[3] and C.O.

Berman from the day he arrived at LCCF for work release, and that he was also "physically

abused by Lt. Pugh." Plaintiff contends that he has filed grievances and written to LCCF

supervisors, asking for the harassment to stop, but to no avail. Plaintiff maintains that

Defendants Pugh and Elmy threatened to harm him if he continued to complain to LCCF

supervisors. Plaintiff asserts that he has been made to strip, that his room has been

repeatedly searched, that his personal belongings have been trashed (including urination on

his clothing), and that Defendants called him sexually derogatory names.[4]

On an unspecified date, after Plaintiff's letter to Major Larson was allegedly

---

[1] Plaintiff does not identify the position "Lou Elmy" holds at LCCF.

[2] The R&R finds that Jones arrived sometime in 2009. In his Complaint, however, which was executed on February 11, 2010, Jones alleges he had not received care from his infectious disease doctor for his terminal illness (which is later referenced as AIDS) since he arrived at LCCF almost twenty (20) months beforehand. Consequently, it appears Jones arrived at LCCF at some point during 2008.

[3] Lt. Dominic is not named as a Defendant in this matter.

[4] Plaintiff's Complaint does not present the claims in separate numbered paragraphs as required by Fed. R. Civ. P. 10(b).

intercepted by a correctional officer, Plaintiff avers that he was called into an office where Lt. Pugh, Elmy, and a third person named "Stacey" were present. Plaintiff contends that they threatened to harm him if he ever wrote another letter to Major Larson. Plaintiff claims that in response to asking Lt. Pugh to stop calling him sexually derogatory names, "Lt. Pugh got in my face . . . and he pushed me against Lou Elmy's desk injuring my lower back and knocking me to the floor." Plaintiff's Complaint states that "[t]his is the second time I was sexually harassed and physically abused by workers at LCCF."

Plaintiff maintains that because of the continuing harassment, he fell into a depression and experienced rapid weight loss, migraines, stomach pain, diarrhea, worsening asthma, and hair loss. Plaintiff further asserts that his already compromised immune system became weaker, resulting in blurred vision, hives, peeling skin, and swelling of his tongue. Plaintiff contends that all of his physical ailments were "brought on by the stress and depression of being physically and sexually harassed," and that he is suffering from anxiety as a result of the alleged threats of impending beatings.

Plaintiff does admit that on one occasion another inmate gave him a grievance form and, because the correctional officers were unaware he had a form, the grievance reached supervisors, who sent him to the emergency room for his asthma. However, Plaintiff further asserts that, on other occasions, the nurse "knew of his harassment and abuse and reportedly told Lt. Pugh about it," but nothing was done. Plaintiff also claims that he has

3

asked to be seen by his infectious disease specialist, but his request was brusquely rejected. Plaintiff adds that "they said they hope I die of AIDS before I get a chance to make it to my doctor and they laughed." Plaintiff avers that he was accused of trying to escape when he failed to arrive at work on the occasion when he was sent to the emergency room. Plaintiff alleges that the supervisor at his work release location called Lt. Dominic and Defendant Elmy on his behalf, but that the corrections officers acted in a disrespectful manner and demanded that Plaintiff return immediately to LCCF. Upon his return, asserts Plaintiff, he was handcuffed and shackled so tightly that his circulation was cut off. He further claims that he heard Lt. Dominic proclaim, "I knew we'd get rid of that faggot." Plaintiff requests that the Court file charges against his alleged attackers and that LCCF staff be "held accountable for their abuse, sentenced to fine [sic] or jail time and to pay financially for my pain and suffering."

After a comprehensive review of the Complaint, Chief Magistrate Judge Blewitt found that Plaintiff was attempting to assert claims of excessive force, failure to protect, deliberate indifference to serious medical needs, verbal and sexual harassment, and false accusations of escape. As noted above, Chief Magistrate Judge Blewitt found that only the excessive force claim against Defendant Pugh should survive initial screening of the Complaint.

## II. DISCUSSION

### A. Scope of Review of Magistrate Judge's Report and Recommendation

The R&R is accompanied by a notice which provides that any party can obtain review of the Order by filing written objections within fourteen (14) days. The notice further states that those portions of the Report or specified proposed findings or recommendations to which objection had been made would be considered de novo. In the instant action, Plaintiff has not formally objected to the R&R. Accordingly, de novo review of the record and plenary consideration of Plaintiff's contentions are not required.

It has been recognized in this Circuit, however, that because adoption of the R&R of a magistrate judge represents a final decision of the district court, the district judge should give "some level of review to dispositive legal issues raised by the Report." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also United Steelworkers of Am. v. New Jersey Zinc Co., 828 F.2d 1001, 1006 (3d Cir. 1987) (finding that a party's failure to object to a magistrate judge's report on a dispositive matter results in a loss of that party's right to automatic de novo review of specific proposed findings; however, the "better practice" is for the district court to review the dispositive questions discussed in the R&R). The extent of review is committed to the sound discretion of the district court. See Thomas v. Arn, 474 U.S. 140, 154, (1985); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984). See also Africa v. City of Philadelphia, et al., 849 F. Supp. 331, 344 (E.D. Pa. 1994).

5

## B. Standard of Review

When considering a complaint accompanied by a motion to proceed in forma pauperis, a district court may rule that process should not issue if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); Douris v. Middleton Township, 293 F. App'x 130, 132 (3d Cir. 2008). Indisputably meritless legal theories are those "in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit." Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)).

An action by an incarcerated person that seeks relief against a government employee must be screened to determine if dismissal is warranted on the same grounds. See 28 U.S.C. § 1915A. Under 28 U.S.C. § 1915(e)(2)(B)(ii), a federal court must dismiss a case filed in forma pauperis if the court determines that the complaint "fails to state a claim on which relief may be granted." This statutory requirement calls for application of the standard employed to analyze motions to dismiss under Fed. R. Civ. P. 12(b)(6). Thus, in reviewing the legal sufficiency of a plaintiff's complaint, the truth of his factual allegations is accepted, Morrison v. Madison Dearborn Capital Partners III L.P., 463 F.3d 312, 314 (3d Cir. 2006), and the controlling question is whether the complaint alleges "enough facts to

state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).

Pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972), and pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. Grayson v. Mayview State Hosp., 293 F.3d 103, 106 (3d Cir. 2002); see also Estelle v. Gamble, 429 U.S. 97, 107-108 (1976).

## C. Section 1983 Claims against Luzerne County Correctional Facility

Chief Magistrate Judge Blewitt found that Defendant LCCF should be dismissed because Plaintiff does allege any claims against LCCF in his Complaint, and because LCCF is not a "person" under 42 U.S.C. § 1983. Chief Magistrate Judge Blewitt accurately found that Plaintiff makes no mention of LCCF in the body of the Complaint. In any event, as the Magistrate Judge observed, a prison or correctional facility is not a person within the meaning of § 1983. See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); Sponsler v. Berks County Prison, Civ. A. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. Feb. 28, 1995). It is thus clear that LCCF is not a properly named Defendant in this matter and shall be dismissed.

7

## D. Eighth Amendment Excessive Force Claim

The R&R concluded that Plaintiff sufficiently alleged the elements of an Eighth

Amendment excessive force claim against Lt. Pugh.  The use of excessive force against

prisoners constitutes cruel and unusual punishment.  Hudson v. McMillian, 503 U.S. 1, 5

(1992).  Even though a plaintiff need not allege a serious injury to state a claim, the Eighth

Amendment does not protect against reasonable uses of force.  Id. at 7, 9-10.  "[T]here is no

constitutional violation for 'de minimis uses of physical force, provided that the use of force

is not of a sort repugnant to the conscience of mankind'."  Brooks v. Kyler, 204 F.3d 102,

107 (3d Cir. 2000) (quoting Hudson, 503 U.S. at 9-10).  The "use of wanton, unnecessary

force resulting in severe pain," however, is actionable.  Id. at 109.

In an excessive force claim, the core judicial inquiry is "whether force was applied in

a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

harm."  Hudson, 503 U.S. at 7.  In evaluating a claim of excessive use of force, the court

must take several factors into consideration, such as:

> (1) 'the need for the application of force'; (2) 'the relationship between the
> need and the amount of force that was used'; (3) 'the extent of injury
> inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as
> reasonably perceived by responsible officials on the basis of the facts
> known to them' and (5) 'any efforts made to temper the severity of a forceful
> response.'

Brooks, 204 F.3d at 106 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Construing the allegations in the Complaint in a light most favorable to Plaintiff, Chief Magistrate Judge Blewitt appropriately found that Plaintiff has alleged enough facts to state an Eighth Amendment excessive force claim against Lt. Pugh regarding the incident in which Pugh allegedly pushed Jones against a desk, knocked him to the floor, and caused him a lower back injury. Based on the allegations, there appears to have been no penological need for Lt. Pugh to have used force against Plaintiff after Plaintiff asked Pugh to stop calling him derogatory names. Further, because Plaintiff was the only prisoner in an office with three LCCF staff members when this incident occurred, it appears that Lt. Pugh could not have reasonably perceived any threat to the safety of other inmates or staff. Additionally, because Plaintiff alleges that he fell to the floor and injured his back, for present screening purposes, it appears that Lt. Pugh used more than de minimis force. Since Plaintiff's allegations against Lt. Pugh indicate that Pugh maliciously pushed him in a deliberate attempt to cause harm, and not in a good faith effort to maintain or restore discipline in the correctional facility, Plaintiff has sufficiently pled the elements of an Eighth Amendment excessive force claim.

## E. Eighth Amendment Failure to Protect Claim

The magistrate judge recommended dismissal of Plaintiff's Eighth Amendment failure to protect claim against Defendants Elmy and Berman. To effectively plead an Eighth Amendment failure to protect claim, a plaintiff must allege that he endured conditions

"posing a substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Additionally, the correctional officer who is alleged to violate the Eighth Amendment must

have demonstrated "deliberate indifference."  Id. at 835.  Prison officials exhibit deliberate

indifference when they know of, and disregard, an excessive risk to the inmate's safety.  Id.

Therefore, negligence, or a lack of due care under the circumstances, is insufficient to

support a claim that the defendants failed to protect the prisoner.  Davidson v. Cannon, 474

U.S. 344, 347 (1986).  An officer has a duty to take reasonable steps to prevent a victim

from another officer's use of excessive force, but "an officer is only liable if there is a realistic

and reasonable opportunity to intervene."  Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir.

2002).

Plaintiff has failed to properly state an Eighth Amendment failure to protect claim

against Defendant Berman.  Plaintiff has not averred that Berman was in the vicinity of Lt.

Pugh when the alleged pushing incident occurred, rending Berman without a realistic

opportunity to intervene.  In contrast, Plaintiff has asserted that Lou Elmy and "Stacey" were

in the office with Lt. Pugh when the alleged incident took place.[5]  Therefore, at this stage of

the proceedings, Plaintiff has alleged enough to find it conceivable that Lou Elmy had an

opportunity to intercede in an escalating verbal altercation and potentially defuse the matter.

---

[5] The R&R finds that neither Elmy nor Berman were in the vicinity of Lt. Pugh when
he allegedly pushed Plaintiff.  Plaintiff's Complaint, however, does aver that "I was called
into the office where Lt. Pugh, Lou Elmy, and Stacey were."

For the aforementioned reasons, Plaintiff fails to state a failure to intervene claim against Berman, but successfully pleads an Eighth Amendment failure to protect claim against Lou Elmy.

## F. Eighth Amendment Denial of Proper Medical Care Claim

The R&R concluded that Plaintiff's Eighth Amendment denial of proper medical care claim should be dismissed because Plaintiff did not state the personal involvement of any named Defendants. An Eighth Amendment denial of proper medical care claim requires a plaintiff to show "(I) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003); see also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Mines v. Levi, No. 07-1739, 2009 WL 839011, at *7 (E.D. Pa. Mar. 26, 2009) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991)); Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 F. App'x 191, 193 (3d Cir. 2008) (quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

Plaintiff has not alleged a denial of proper medical care claim against any of the named Defendants. It may be, however, that Plaintiff can allege a viable Eighth Amendment denial of medical care claim. Plaintiff has AIDS, which qualifies as a serious medical need. According to the Complaint, at least some of the staff at LCCF knew Plaintiff has this terminal illness, based on the statement he overheard Lt. Dominic make.[6] Further, this statement indicates that appropriate care from a specialist may be necessary. Additionally, Plaintiff asserts he did not receive care for approximately twenty (20) months. Such averments support an inference of deliberate indifference on the part of at least some LCCF staff member. Accordingly, Plaintiff will be permitted an opportunity to amend his Complaint to cure the deficiencies in pleading his denial of medical care claim.

If Plaintiff chooses to file an amended complaint regarding the aforementioned event, he must be mindful of the personal-involvement requirement and allege facts that would indicate that at least one named defendant knew that Plaintiff faced a substantial risk of serious harm without specialty care for his terminal illness, and that the defendant(s) deliberately disregarded that risk by failing to take reasonable measures to abate it. Plaintiff should be specific as to the date, time and description of the relevant factual events which demonstrate at least one defendant's alleged involvement in the violation of his Eighth Amendment rights.

---

[6] "They said they hope I die of AIDS before I get a chance to make it to my doctor."

12

Plaintiff will be granted twenty-one (21) days to submit an amended complaint. Plaintiff is directed to file a comprehensive amended complaint that sets forth his claims in short, concise, plain statements in sequentially numbered paragraphs. The amended complaint must be a new pleading which stands by itself without reference to the documents already filed. The amended complaint must be complete in all respects. Young v. Keohane, 809 F. Supp. 1185 (M.D. Pa. 1992). It should identify the claim asserted, the defendants implicated, and the precise actions of each defendant that allegedly violated Plaintiff's rights. See Biercos v. Nicola, 860 F. Supp. 226, 236 (E.D. Pa. 1994); Meekins v. Collegan, No. 3:CV05-1394, 2005 WL 2133677, at *1 (M.D. Pa. Sept. 1, 2005). If Plaintiff wishes to include other documents along with the amended complaint, the documents should be labeled as exhibits and attached to the amended complaint. Plaintiff is further advised that failure to respond in the manner explained above will result in the dismissal of this Eighth Amendment denial of proper medical care claim.

## G. False Misconduct Claim

Regarding Plaintiff's allegations that unnamed prison staff falsely accused him of attempted escape when he failed to arrive at his job on time because he was in the emergency room, Chief Magistrate Judge Blewitt found that Plaintiff did not state a cognizable claim. In Bailey v. Beard, No. 3:CV-06-1707, 2008 WL 4425588, at *10 (M.D. Pa. Sept. 29, 2008), the Court stated:

13

Plaintiff's allegations that he was issued false misconduct reports does [sic] not constitute a violation of an inmate's constitutional rights. A prisoner does not have a constitutional right to be free from being falsely or wrongly accused of conduct. A purportedly false misconduct report does not give rise to the level of deprivation needed to constitute cruel and unusual punishment under the Eighth Amendment because they "are not 'sufficiently serious' that they result 'in the denial of the minimal civilized measure of life's necessities.'" Nor does it constitute a denial of due process under the Fourteenth Amendment. "[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." However, allegations of being falsely charged with misconduct based on retaliatory motives generally satisfies [sic] the requirement that an inmate establish whether the actions purportedly taken in retaliation for this conduct are sufficiently "adverse" to constitute constitutionally cognizable infringements. [Citations omitted.]

In the instant action, there are no allegations that LCCF staff, let alone named Defendants, pursued the alleged false misconduct. Further, there are no claims of any sanctions against Plaintiff. In fact, Plaintiff has not made clear if there actually is a misconduct report filed because of his alleged escape attempt, or if a correctional officer only threatened to do so.

Plaintiff's Complaint, however, could be construed to allege that Lt. Dominic, Pugh, Elmy, and/or other unnamed officers acted in an increasingly aggressive manner towards Plaintiff as a result of his filing a cause of action. Plaintiff does contend that he heard Lt. Dominic and other officers discussing what they would do if Plaintiff files a law suit against them: "If we have to we'll get one of the inmates to f**k that faggot up." However, again, Plaintiff would need to specify against whom the claim is brought and that their actions

14

would be sufficiently adverse to support a claim of retaliation.

Plaintiff will be permitted an opportunity to amend his Complaint to cure the deficiencies in pleading this claim. If Plaintiff chooses to file an amended complaint regarding the aforementioned event, he must be mindful of the personal-involvement requirement and allege facts that would indicate that Plaintiff's constitutional rights were violated as a result of the false accusation, and that the defendant(s) deliberately filed a false misconduct report as a result of Plaintiff's attempt to exercise his First Amendment rights. Plaintiff should be specific as to the date, time and description of the relevant factual events which demonstrate at least one defendant's alleged involvement in the violation of his First Amendment rights.

## H. Verbal and Sexual Harassment Claims

Plaintiff's Complaint includes allegations of verbal and sexual harassment. The R&R concluded that the alleged verbal and sexual harassment did not violate any of Plaintiff's constitutional rights. Mere words spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights by the officer. Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment by threatening to hang an inmate is not sufficient to state a constitutional deprivation under § 1983). "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a

15

protected liberty interest or deny a prisoner equal protection of the laws." <u>Dewalt v. Carter</u>, 224 F.3d 607, 612 (7th Cir. 2000). Accordingly, Plaintiff's claim of verbal assault fails to state a cognizable claim.

Additionally, Plaintiff's claim of sexual harassment does not support a cruel and unusual punishment claim. Under the Eighth Amendment, "To prevail on a constitutional claim of sexual harassment, an inmate must . . .prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." <u>Freitas v. Ault</u>, 109 F.3d 1335, 1338 (8th Cir. 1997). Although sexual abuse of a prisoner by a correctional officer serves no legitimate penological purpose, <u>Farmer</u>, 511 U.S. at 834, Courts of Appeals have held that sexual harassment in the absence of contact or touching does not establish excessive and unprovoked pain infliction. <u>See, e.g.</u>, <u>Howard v. Everett</u>, No. 99-1277, 2000 WL 268493, at *1 (8th Cir. Mar. 10, 2000) (sexual comments and gestures do not unduly and wantonly inflict pain); <u>Murray v. United States Bureau of Prisons</u>, 106 F.3d 401 (6th Cir. 1997) (offensive remarks regarding a transsexual prisoner's appearance, lifestyle, and presumed sexual preference do not state an Eighth Amendment claim); <u>Morales v. Mackalm</u>, 278 F.3d 126, 129 (2d Cir. 2002) (demand for sex in front of other female staff does not rise to the level of an Eighth Amendment violation); <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (severe verbal sexual harassment and intimidation are not

sufficient to state a claim under the Eighth Amendment); <u>Boxer X v. Harris</u>, 437 F.3d 1107,1111 (11th Cir. 2006) (solicitation of prisoner's masturbation, even under threat of retaliation, does not violate the Eighth Amendment); <u>Samford v. Staples</u>, 249 F. App'x 1001 (5th Cir. 2007) (prisoner's allegations of humiliation and depression, but no physical injury, from a strip search conducted in a public hallway, fail to state an Eighth Amendment claim).

Nor does Plaintiff's claim of unwarranted strip searches provide a basis for relief. In this regard, inmates do not have a right "to be free from strip searches, which can be conducted by prison officials without probable cause provided that the search is conducted in a reasonable manner." <u>Ostrander v. Horn</u>, 145 F. Supp. 2d 614, 620 (M.D. Pa. 2001) (citing <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979)). When a prisoner moves through restricted areas of a correctional facility, it is not unreasonable for staff to check for contraband via visual body cavity searches upon the prisoner's return. <u>See, e.g.</u>, <u>Millhouse v. Arbasak</u>, Nos. 09-2709, 09-2858, 2010 WL 1253045, at *2 (3d Cir. Apr. 1, 2010) (finding that even if a prisoner is humiliated and embarrassed that prison officials routinely perform strip searches, if conducted in a reasonable manner, the constitution is not violated).

Plaintiff's averments also do not support an equal protection claim. To allege a § 1983 claim under the equal protection clause of the Fourteenth Amendment, a plaintiff must be part of a protected class. <u>See, e.g.</u>, <u>Seltzer-Bey v. Delo</u>, 66 F.3d 961 (8th Cir. 1995) (plaintiff did not show that he was treated differently because he was a member of a

17

protected class when he alleged that a correctional officer conducted daily strip searches, during which officers made sexual comments about prisoner's penis and buttocks, and one incident where, during a strip search, the officer rubbed prisoner's buttocks with a nightstick, asking plaintiff if it reminded him of something); see also Sotelo v. Stewart, No. CV 03-1668, 2005 WL 2571606, at *2 (D. Ariz. Oct. 11, 2005) (citing Court of Appeals case that states homosexuals are not a protected class).

In his Complaint, Plaintiff alleges that he was verbally harassed based on his sexual orientation, and humiliated because he had been made to strip naked for searches on at least two occasions, one of which was in the line of vision of other inmates. If true, this behavior is reprehensible, but without allegations of direct physical pain caused by the searches, the conduct does not rise to the level of an Eighth Amendment violation. Additionally, although deplorable, hate speech based on a prisoner's sexuality, combined with requested strip searches in a prison, does not "shock the judicial conscience" such that substantive due process rights have been violated. Further, Plaintiff makes no allegations that the searches were conducted in an unreasonable manner as he returned from work release, or were sexually abusive. Thus, there is no basis for a Fourth Amendment claim. Lastly, Plaintiff has not alleged that actions were taken against him based upon his race. Accordingly, Plaintiff's equal protection claim also fails. Therefore, Plaintiff's sexual harassment claim is not cognizable as a constitutional violation.

## I. Form of Relief

In a §1983 action, a plaintiff may not properly request as relief that this Court file criminal charges against LCCF staff for their alleged physical abuse and sentence them for their alleged sexual harassment. See, e.g., Matthews v. Villella, No. 09-1486, 2010 WL 2017664, at *1 (3d Cir. May 21, 2010) (noting that a prisoner's request to press criminal charges against defendant officials is an improper form of relief). Further, this Court has no authority to institute criminal charges against anyone; that authority rests solely within state and federal prosecutors. See Caracter v. Avshalumov, No. 06-4310, 2006 WL 3231465, at *3,4 (D.N.J. Nov. 8, 2006) (citing cases).

## J. Motion for Monetary Damages

Plaintiff makes a "motion" for monetary damages, but no such motion exists under the Federal Rules of Civil Procedure, and, accordingly, the "motion" will be denied. Collection of monetary damages depends on whether Plaintiff ultimately prevails on a cognizable claim. Thus, this motion will be denied.

## K. Motion for Appointment of Counsel

It is a well-established principle that prisoners have no constitutional or statutory right to appointment of counsel in a civil case. Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). Yet, district courts have broad discretionary power to appoint counsel under 28 U.S.C. § 1915. Montgomery v. Pichak, 294 F.3d 492, 499 (3d Cir. 2002), (citing Tabron v.

19

<u>Grace</u>, 6 F.3d 147, 153 (3d Cir. 1993)); <u>see also</u> <u>Ray v. Robinson</u>, 640 F.2d 474, 477 (3d Cir. 1981). The United States Court of Appeals for the Third Circuit has stated that the appointment of counsel for an indigent litigant should be made when circumstances "indicate the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." <u>Smith-Bey v. Petsock</u>, 741 F.2d 22, 26 (3d Cir. 1984).

The initial determination to be made by the court in evaluating the expenditure of the "precious commodity" of volunteer counsel is whether the plaintiff's case "has some arguable merit in fact and law." <u>Montgomery</u>, 294 F.3d at 499. Other factors pertinent to the determination as to whether counsel should be appointed are:

1. The plaintiff's ability to present his or her own case;
2. The difficulty of the particular legal issues;
3. The degree to which factual investigation will be necessary and the ability of the plaintiff to pursue the investigation;
4. The plaintiff's capacity to retain counsel on his or her own behalf;
5. The extent to which a case is likely to turn on credibility determinations; and,
6. Whether the case will require testimony from expert witnesses.

<u>Montgomery</u>, 294 F.3d at 499 (citing <u>Tabron</u>, 6 F.3d at 155-57).

In moving for the appointment of counsel, Plaintiff argues he cannot afford to hire an attorney and his terminal illness may cause him to miss deadlines. It is clear, however, that the appointment of counsel at this juncture in the case is not warranted. While Plaintiff may

be incarcerated and have a terminal disease, he has thus far demonstrated that he is fully capable of communicating with and timely responding to the Court, as demonstrated by his May 17, 2010 letter (Dkt. 10), ensuring that the Court is receiving his communication. Because it is unclear at this early stage of the case whether Plaintiff's claims have any factual or legal merit, the Court cannot say that Plaintiff is unable to continue litigating this case on his own without the assistance of counsel. For these reasons, the motion for appointment of counsel will be denied without prejudice. Should future proceedings demonstrate the need for counsel, the matter can be reconsidered, either sua sponte or upon a motion properly filed.

Thomas I. Vanaskie
United States Circuit Judge
(Sitting by Designation on the District Court)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTIAN JONES,      :
    Plaintiff         :
                 :
     v.           :       No. 3:10-CV-0359
                 :       (JUDGE VANASKIE)
                 :
Luzerne County Correctional    :
Facility, et al.,          :
    Defendants      :

## ORDER

**NOW, THIS 23rd DAY OF AUGUST, 2010,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The Report and Recommendation of Magistrate Judge Thomas M. Blewitt (Dkt. 7) is **ADOPTED IN PART**.

2. Defendant Luzerne County Correctional Facility is **DISMISSED** from this action.

3. Plaintiff's Eight Amendment failure to protect claim against Defendant Berman and Plaintiff's claims of verbal and sexual harassment are **DISMISSED**.

4. Within twenty-one (21) days of the date of this Order, Plaintiff may file an amended complaint setting forth his Eighth Amendment denial of proper medical care claim, and his First Amendment retaliation claim.

5. Plaintiff's failure to file an amended complaint will result in dismissal of the Eighth Amendment denial of proper medical care claim and the First Amendment retaliation claim,

as well as the dismissal of Defendant Berman with prejudice. Plaintiff's case will then

proceed only on the Eighth Amendment excessive force claim against Defendant Pugh and

the Eighth Amendment failure to protect claim against Defendant Elmy.

6. Plaintiff's request to proceed without pre-payment of fees and costs (Dkt. 4) is

**GRANTED**.

7. Plaintiff's Motion for Monetary Damages (Dkt. 8) is **DENIED**.

8. Plaintiff's Motion to Appoint Counsel (Dkt. 9) is **DENIED, WITHOUT PREJUDICE**.

9. This matter is referred to Chief Magistrate Judge Blewitt for pre-trial management,

and the Clerk of Court is directed to reassign this matter to another Judge of this Court.


Thomas I. Vanaskie
United States Circuit Judge
(Sitting by Designation on the District Court)